UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

                Plaintiff,

   -against-                                          1:08-CR-0038 (LEK)

JAHMAL IRVING,

                Defendant.

**MEMORANDUM-DECISION AND ORDER**

Defendant Jahmal Irving ("Defendant") was indicted on January 23, 2008 on one count of unlawful possession of a firearm by a previously convicted felon in contravention of 18 U.S.C. § 922 (g)(1) and § 924 (a)(2). Indictment (Dkt. No. 11). Presently before this Court is Defendant's Motion to suppress the firearm and dismiss the indictment on the grounds that the search and seizure which led to the discovery of the firearm was unconstitutional. Motion (Dkt. Nos. 19, 20). This Court held a suppression hearing on June 18, 2009. Dkt. No. 26. For the reasons discussed below, Defendant's Motion is denied.

**I.    BACKGROUND**

On July 26, 2007, the Albany Police Department was contacted by Albany Medical Center Emergency Room personnel regarding a gun shot victim, who had arrived at Albany Medical Center at approximately 4:00 p.m. Def.'s Mem. at 1 (Dkt. No. 19, Attach. 3). The victim was identified as Defendant Jahmal Irving. <u>Id.</u> While the Defendant was undergoing medical treatment, members of

the Albany Police Department (the "Officers") arrived at the hospital and questioned him about the shooting. Id. At this time, Defendant was not in custody nor was he under arrest. Gov't Mem. at 1 (Dkt. No. 31). The Defendant first indicated to the Officers that he was shot in the vicinity of Dana Avenue and Knox Street in Albany, New York and that he then went to 90 Dove Street, also in Albany, before coming to the hospital. Id. In light of this information, police personnel searched the areas of both Dana and Knox and 90 Dove Street. Id. However, they found no evidence of a shooting. Id.

Meanwhile, the Albany Police Department had received a report of a shooting at 67 Morris Street in Albany, New York. Id. at 3; see Ex. 5 (Dkt. No. 23, Attach. 2). Officers responded to the Morris Street address, where a resident of the building described a shooting that had occurred at the location between 3:30 and 4:00 p.m. Id. The police then contacted the landlord and learned that apartment #3D was rented to the Defendant. Id.; see also Ex. 6 (Dkt. No. 23, Attach. 2).

Later, Defendant gave another statement to the police where he allegedly admitted that he had been shot while in the vicinity of his apartment on Morris Street in Albany. See Ex. B (Dkt. No. 20, Attach. 2). Officers gave Defendant a form to sign, consenting to a search of his apartment. Id. After Defendant signed the consent form, Albany Police Officers searched Defendant's apartment and seized a gun allegedly found in a bedroom closet, behind a water heater. See Def.'s Mem. at 2.

Defendant now argues that the consent he gave to search his apartment cannot be deemed voluntary, due to the effect of the sedatives he was administered while at the hospital. Def.'s Mem. at 3-4. Defendant also argues that the consent was not valid because the officers failed to inform him of "his constitutional right not to consent to a search of his home." Def's Post Hr'g Mem. at 3-

4 (Dkt. No. 30). In the alternative, Defendant argues that the firearm must be suppressed because the search of his apartment exceeded the scope of Defendant's consent. Def's Mem. at 3-4. All of Defendant's arguments are without merit and accordingly this Motion is denied.

## II.     DISCUSSION

### A.     Consent Was Voluntary

"[A] warrantless entry and search are permissible [under the Fourth Amendment] if the authorities have obtained the voluntary consent of a person authorized to grant such consent." United States v. Elliott, 50 F.3d 180, 185 (2d Cir. 1995) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). "The government has the burden of proving, by the preponderance of the evidence, that a consent to search was voluntary." United States v. Isiofia, 370 F.3d 226, 230 (2d Cir. 2004) (citing United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983)). "To ascertain whether consent is valid, courts examine the 'totality of the circumstances' to determine whether the consent was 'a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority.'" United States v.Garcia, 56 F.3d 418, 422 (2d Cir. 1995) (quoting United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993)). Defendant asserts that his consent to search his apartment was not made voluntarily because he had been shot and was medicated.

The fact that an individual is under the influence of drugs, alcohol or extreme physical pain does not necessarily render consent involuntary. See United States v. Medico, 557 F.2d 309, 312-13 (2d Cir. 1977) (consent to search defendant's apartment was freely and voluntarily given notwithstanding that on the day she consented to the search, she had used marijuana, cocaine, heroin and methadon); see also United States v. Martin, 781 F.2d 671, 674 (9th Cir. 1985) (statements were

voluntary in spite of the fact that they were given while defendant was in great pain and under the influence of Demerol, a pain-killing medication); United States v. Isiofia, 02 Crim. 520 (HB), 2003 U.S. Dist. LEXIS 7542, at *28 (S.D.N.Y. May 2, 2003) ("The fact that a person is under the influence of drugs or alcohol does not necessarily render consent involuntary, although intoxication may be considered in the evaluation of voluntariness"). Consent to search has also specifically been deemed voluntary where the defendant had been shot and was in considerable pain. United States v. Moreno, 966 F.2d 1488, 1494 (D.C. Cir. 1992) (rejecting defendant's contention that his medical condition rendered his consent involuntary given defendant's coherence when he gave his consent from his hospital bed).

The record before the Court indicates that Defendant's consent was freely and voluntarily given. Defendant's medical records indicate that although he "acquiesced to pain management" and was administered 4 mg of morphine, Defendant's "speech was normal" and his "orientation, memory, [and] insight [were] intact." Dkt. No. 31, Attach 2. The records also indicate that Defendant made "good eye contact," his "speech [was] appropriate/connected" and his verbal responses were "oriented." Id. Further, all four of the officers that testified at the suppression hearing indicated that at all times the Defendant was lucid, conscious and communicative.[1] At no time before or while the consent was being given did the Defendant in any way indicate that he was

---

[1] Defendant argues that the case cannot proceed because of inconsistencies adduced during the course of the suppression hearing held in this Court on June 18, 2009. Dkt. No. 26. At the hearing, Detective Van Amburgh testified that he had not in fact been present when the consent to search was obtained; instead, he had been at 67 Morris Street where he received the consent to search form from Detective Kubisch. Detective Van Amburgh readily acknowledged that his grand jury testimony that he was present and personally responsible for obtaining the consent was mistaken. Notwithstanding this inconsistency, the testimony of the other three officers at the suppression hearing coupled with Defendant's medical records are sufficient to sustain the Government's burden of proof.

in too much pain or for any reason unable to answer the Officers' questions. In fact, Defendant did not claim to be too ill to answer the Officers' questions until approximately 9:00 p.m., when he was confronted with the discovery of the firearm, well after both the consent and Miranda rights were given. See Ex. 4 (Dkt. No. 23, Attach. 2); Dkt. No. 31 at 5. Accordingly, based on the totality of the circumstances, this Court finds that the Government has sustained its burden of proving, by the preponderance of the evidence, that Defendant's consent was voluntary.

### B. Consent Was Constitutional

Defendant argues that his consent was not constitutionally valid since the Officers failed to inform him of his "constitutional right not to consent" to the search. Def's Post Hr'g Mem. at 3-4 (Dkt. No. 30). In support of this argument, the Defendant points to the search consent form, which contains the recital that "having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant." See Ex. 3 (Dkt. No. 23, Attach. 2). This argument, however, is without merit.

It is well settled that there is no affirmative duty to advise a defendant of his right to refuse to consent to a search. See United States v. Drayton, 536 U.S. 194, 206-07 (2002) ("The Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search."); see also Schneckloth, 412 U.S. at 227 ("While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent."); United States v. Crespo, 834 F.2d 267, 271-72 (2d Cir. 1987) ("Nor under Schneckloth [] does the Government have an affirmative duty to advise a suspect that he may refuse his consent to an apartment search.") (internal citation omitted); Isiofia, 370 F.3d at 233. Here the

very search consent form, which the Defendant personally completed and signed and the Defendant now cites in support of his argument, fully availed the Defendant of his right. See Ex. 3. Even if the form had not done so, Defendant's consent would still be valid; knowledge of the right to refuse consent is not required and the totality of the circumstances, as discussed above, indicate that the Defendant's consent was effective.

### C. Search Did Not Exceed Scope of Consent

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991) (citations omitted). The consent form, which Defendant voluntarily completed and signed, stated "I, Jahmal Irving, being duly sworn hereby authorize Det. Thomas Kubisch, members of the Albany, New York Police Department to conduct a *complete* search of my residence located at 67 Morris St. [sic] Apt [sic] 3D, Albany, NY. I further give my consent and permission to said Officer(s) to siege and taking into his (their) possession *any and all* evidence relating to *any* crime found by him (them) incident to or resulting from such a search." See Ex. 3 (emphasis added). This form was sworn to by the Defendant and notarized and signed by two Officers. Id. Here the Defendant provided general consent to search his residence, which clearly included the utility closet attached to the back bedroom where the firearm was found. Since a "typical reasonable person" would certainly understand the term residence to include all rooms and closets therein, this Court finds that the search did not exceed the scope of Defendant's consent.

### D. Dismissal of Indictment

Defendant also moved for a dismissal of the indictment on the grounds that the search and

seizure which led to the discovery of the firearm was unconstitutional. Motion (Dkt. Nos. 19, 20). Since this court has held that this search and seizure was constitutional, there is no basis to dismiss the indictment.

### III.   CONCLUSION

Accordingly, it is hereby

**ORDERED,** that Defendant's Motion to suppress the firearm and dismiss the indictment (Dkt. Nos. 19, 20) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve copies of this order on all parties to this action.

**IT IS SO ORDERED**.

DATED:    July 27, 2009
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge